United States District Court
District of Connecticut
FILED AT BRIDGEPORT
4/8/05
Kevin F. Rowe, Clerk
By D. Candee

FILED

2005 APR -1 A 10: 58

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

United States District Court
District of Connecticut

Michael Verrilli,

          *Plaintiff*

v.

Sikorsky Aircraft Corporation, &
Teamsters Local Union No. 1150

          *Defendants.*

Civil Action No.

3:03 CV 0541 (WWE)

March 24, 2005

### Memorandum of Law in Support of Defendant Sikorsky Aircraft Corporation's Motion for Summary Judgment

*Introduction*

    Michael Verrilli had worked at Sikorsky Aircraft Corporation ("Sikorsky Aircraft" or "Company") for twenty-one years when, in the late summer of 1999, he and other employees in the Blades Department were advised that the Company would be getting a contract for new work relating to the overhaul and repair of rotor blades for a commercial helicopter. Verrilli and his coworkers were told that this new work was "FAA-covered" work and, as a result, each of them would be subject to FAA drug testing rules. The Company and Teamsters Local 1150 ("Local 1150 or "Union"), the Union representing Verrilli and the others, had experience with the FAA drug testing rules and had incorporated language in their collective

1

bargaining agreement ("CBA") that provided, in part, that an employee who twice tested positive for drugs would be discharged. Verrilli tested positive for marijuana on September 9, 1999 and he tested positive for cocaine on March 14, 2000. As a result, his employment was terminated, clearly for just cause. In the face of the clear agreement with the Company that "two strikes and you're out," the Union declined to take Verrilli's grievance to arbitration.

In this lawsuit, it appears that Verrilli does not contest that the drug tests to which he submitted were done accurately and that the Company's agreement with the Union unambiguously provides that a second positive drug test is just cause for discharge. Rather, he appears to make the claim that he should not have been subject to any drug test because he was not doing "FAA-covered work." That position rests on his unsupported assertion that he never did FAA-work. But, whether or not that assertion is true, it is not the proper standard. Rather, the FAA-drug testing program applies to any employee who is "actually performing, ready to perform, or immediately available to perform" covered work. It is undisputed that Verrilli met that standard.

Verrilli's lawsuit is a so-called "hybrid" action under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a), which provides individual employees a federal cause of action for breach of a collective bargaining

2

agreement (CBA) where the employee can also prove that his union breached its duty of fair representation. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983)  As this memorandum will demonstrate, Sikorsky Aircraft is entitled to summary judgment because the undisputed material facts show that 1) Sikorsky Aircraft did not breach the collective bargaining agreement, 2) the union did not fail in its duty to represent Verrilli, and 3) Verrilli waited too long to file this suit.

## STATEMENT OF THE FACTS

The facts on which Sikorsky Aircraft relies in support of its motion for summary judgment are set forth in the separately-filed Local Rule 56(a)(1) statement of undisputed material facts.  Those facts can be summarized as follows:

The plaintiff, Michael Verrilli, worked as a senior composite worker in the Blades Department of Sikorsky Aircraft in 1999 and early 2000. In or about September 1999, Verrilli and other similarly situated employees were advised that new work would be coming to their department and that the nature of that work, the remanufacture of S-76 commercial helicopter blades, would mean they would be classified as working in a "safety-sensitive function," subject to the drug and alcohol testing program required by the Federal Aviation Administration.

3

Pursuant to that program, Verrilli submitted to a "pre-employment" drug test on September 9, 1999. The results of that test were positive for marijuana. Verrilli does not dispute those test results. As a result of this positive test, Verrilli was required to undergo four weeks of rehabilitation, after which he submitted to a "return to work" drug test, the results of which were negative. Verrilli returned to "covered work" on October 14, 1999.

Although Verrilli maintains that he never did "FAA work," it is undisputed that the remanufacture of S-76 commercial helicopter blades, the so-called "FAA work," was done in the department in which Verrilli worked during the last quarter of 1999 and thereafter. While that FAA-covered work was in his department, Verrilli remained available to do that work, if assigned.

Because of his positive pre-employment drug test, Verrilli was required by FAA regulations to submit to "follow-up testing" on a monthly basis. In November and December 1999 and January and February 2000, Verrilli submitted to follow-up drug testing, the results of which were negative. On March 21, 2000, Verrilli submitted to another follow-up drug test, the results of which were positive for cocaine.

Since the CBA clearly provided that "[o]n the second occasion of a positive drug or alcohol test finding, the employee shall be discharged, Sikorsky Aircraft terminated Verrilli's employment as of March 30, 2000.

On April 4, 2000, Verrilli filed a timely grievance, protesting his discharge. That grievance was denied at the final step of the grievance procedure on July 18, 2000. The Union initially appealed the grievance to arbitration, but thereafter took no action to do so. Perhaps because of the Union's inaction, Verrilli sought counsel and filed a lawsuit on February 2, 2001 in Connecticut Superior Court against Sikorsky Aircraft alleging a violation of Connecticut's drug testing law. That suit is still pending. A year later, in or about March 2002, Verrilli went to the Union's office to inquire regarding the status of his grievance. The Union maintains that Verrilli was told at that time that it would not take his case to arbitration because the "two strikes and you're out" rule was clear. Verrilli does not recall such a definitive statement, but he got no assurance at that time (nor ever, for that matter) that arbitration would be sought. This lawsuit was filed on March 27, 2003, three years after Verrilli's discharge and eleven months after he made his last inquiry regarding the status of his grievance.

### ARGUMENT

### Standard for Granting Summary Judgment

In considering summary judgment, the standards to be applied have been well settled since the 1986 Supreme Court trilogy. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317

5

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Summary judgment

is appropriate when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."[1]  In ruling on a motion for summary judgment,

> [a] judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the [nonmovant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].

*Anderson*, 477 U. S. at 252.

The moving party has the initial burden of demonstrating that there is no

genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 586. That burden

may be satisfied by "pointing out" the absence of evidence to support the nonmov-

ant's claims. *Celotex*, 477 U.S. at 325. Once the movant satisfies this burden, the

nonmovant then bears the burden of establishing the existence of elements essen-

tial to its case which it would have to prove at trial. *Id.* at 322; *Citizens Bank of

Clearwater v. Hunt*, 927 F.2d 707 (2d Cir. 1991); Fed. R. Civ. P. 56(e).

---

[1]  Fed R. Civ. P. 56(c).

To do this, the non-moving party must establish a genuine issue of material fact in order to preclude the grant of summary judgment. *Matsushita*, 475 U.S. at 585-86; *Rexnord Holdings v. Biderman*, 21 F.3d 522, 525 (2d Cir. 1994). In meeting this burden, the nonmovant may rely only on <u>competent</u> evidence. *Id.* at 526. *See also, Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) ("mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (same); *Heilwell v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994), *cert. denied*, 513 U.S. 1147 (1995) ("[T]o defeat a motion for summary judgment a plaintiff cannot rely on 'conjecture or surmise.'") The nonmovant "may not rest on the pleadings but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." *Cifarelli*, 93 F.3d at 51 (citing *Celotex*, 477 U.S. at 324; *United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994)). Under Rule 56(e), affidavits submitted in opposition to summary judgment must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

In addition, once the movant has established a *prima facie* case showing the absence of a genuine issue of material fact, "the nonmoving party must come for-

7

ward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S. Ct. 152 (1991) (quoting *Matsushita,* 475 U.S. at 586). The required showing by the nonmovant is "heightened when the 'factual context renders [a] claim implausible.'" *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 42 (2d Cir. 1986), *cert denied,* 479 U.S. 1088 (1987) (quoting *Matsushita,* 475 U.S. at 587). In such circumstances, "more persuasive evidence . . . than would otherwise be necessary" must be adduced. *Id.* Similarly, the "mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985). If no rational fact finder could find in the nonmovant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *Anderson,* 477 U.S. at 251-52; *Matsushita,* 475 U.S. at 587. Rather than resting upon "'mere conclusory allegations or denials' as a vehicle for obtaining a trial," the nonmoving party "must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir. 1980). If upon review of the record, however, "'a

8

rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.'" *Suburban Propane v. Proctor Gas. Inc.,* 953 F.2d 780, 788 (2d Cir. 1992) (quoting *Binder v. Long Lighting Co.,* 933 F.2d 187, 191 (2d Cir. 1991)) *See also, Moore v. Capital Region Workforce Development Bd,* ___ F. Supp. 2d ___, 2005 WL 599413 (D. Conn. 2005).

Using these principles, it is plain that Verrilli has no evidence to support any claims for relief and summary judgment is appropriate.

I.    ***Verrilli's Suit Must be Dismissed Because There Was No Breach of the Collective Bargaining Agreement When Sikorsky Aircraft Terminated His Employment after Two Positive Drug Tests***

Like many collective bargaining agreements, the CBA between Sikorsky Aircraft and the Local 1150 provides that the Company has the right to discipline or discharge an employee for "just cause." "Courts have only rarely been called upon to interpret just cause provisions. These issues arise almost exclusively before arbitrators. Normally the courts enter the determination only to review for purpose of enforcement."[2]  When it is necessary to do so, however, courts are to interpret the CBA in accordance with federal common law rather than state law. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456-57 (1957)

---

[2] *S.J. Groves & Sons Co. v. Teamsters Local 627,* 581 F.2d 1241, 1245 n.6 (7th Cir. 1978)

9

"Just cause is a flexible concept, embodying notions of equity and fairness."[3] However, in drug test cases like this one, where the parties to the CBA have specifically agreed that a second, positive drug test is grounds for discharge, arbitrators have no difficulty in finding "just cause." For example, in *Smurfit-Stone Container Corp.*,[4] the employer was found to have just cause to discharge a 32-year employee who tested positive for drugs a second time where the employer's substance abuse policy included a provision stating: "[i]f, subsequently at any time the employee is tested positive a second time, he or she will be immediately terminated."[5]

Verrilli, however, does not seem to challenge the basic rule. He admits he tested positive twice for drugs and that the CBA clearly requires discharge under those circumstances. Rather, he seems to argue that he should not have been tested at all because he did not perform FAA-covered work. The facts, however, are undisputed that FAA-covered work, *i.e.* remanufacturing of blades for commercial S-76 helicopters, was placed in the Blades Department where he worked and that he could have been assigned to that work at any time. The frequency with which an individual employee might actually engage in a safety-sensitive function is not

---

[3] *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1242 (7th Cir. 1997), *citing Arch of Illinois v. District 12, United Mine Workers,* 85 F.3d 1289, 1294 (7th Cir. 1996).

[4] 116 LA 1724 (BNA 2002) (Arbitrator Hockenberry) (copy attached)

[5] *Id.* at 3.

determinative if that employee is available to engage in that function. *See, Gonzalez v. Metropolitan Transportation Authority*,[6] and cases cited therein.

II.     ***Verrilli's Suit Must be Dismissed Because The Union Did Not Breach its Duty of Fair Representation***

In order to prevail against Sikorsky Aircraft in this hybrid §301 suit, Verrilli must prove not only that the Company breached the CBA by discharging him without just cause, he must also prove that he was unable to obtain relief through the contractually mandated grievance and arbitration machinery because his collective bargaining representative, the Union, breached the duty of fair representation that it owed to him. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-65, 571-72 (1976); *Vaca v. Sipes,* 386 U.S. 171, 185-86 (1967); *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 86 (2d Cir. 1989).[7]   As demonstrated in the preceding argument, Verrilli cannot prove that he was discharged without just cause.  However, even if that were not the case, Verrilli cannot prove that the union breached

---

[6] 73 Fed. Appx. 986, 989 (9th Cir. 2003) (copy attached).

[7]  *See also, Balestracci v. General Dynamics Corp.*, 221 F. Supp. 2d 258, 266 (D. Conn. 2002):

> . . . because plaintiff asserts a "hybrid" LMRA claim, plaintiff must demonstrate a breach of the CBA by [his employer] as well as a breach of the duty of fair representation by his union in order to prevail on his LMRA, § 301 claim against GD. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163-65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981);  *White v. White Rose Food,* 237 F.3d 174, 178 (2d Cir.2001).

its duty of fair representation.   Rather, the record shows that the Union considered the facts of Verrilli's case and made a reasonable determination that it would not succeed at arbitration. The reasonableness of this determination is underscored by the fact that the President of Local 1150, Harvey Jackson, was a co-worker of Verrilli in the Blades Department and underwent the same drug-testing regime.

To establish a breach of the duty of fair representation, Verrilli must establish that Local 1150 acted in an arbitrary, discriminatory or bad faith manner. *Vaca v. Sipes, supra*, 386 U.S. at 190. As the Second Circuit noted in *Spellacy v. Airline Pilots Ass'n*, 156 F3d 120, 126 (1998):

> A union breaches its duty of fair representation if its actions "can fairly be characterized as so far outside a 'wide range of reasonableness' ... that [they are] wholly 'arbitrary, discriminatory, or in bad faith.' " [*Airline Pilots Ass'n v.*] *O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127 (quotation omitted). Judicial review of union action, however, "'must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities.'" *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1106 (2d Cir.1991) (quoting *O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127).

"A union may act upon its reasonable interpretation of a labor contract; it need not prosecute a grievance it honestly believes lacks merit."[8]

Sikorsky Aircraft incorporates herein by reference the arguments of Local 1150 with regard to the duty of fair representation issue.

---

[8] *Reed v. UAW Local 663*, 945 F.2d 198, 203 (7th Cir. 1991)

12

III.    ***Verrilli's Claim for a Breach of the Collective Bargaining Agreement Must Be Dismissed Because He Failed to File Suit Within Six Months After His Cause of Action Arose***

In *Ycaza v. CT Transit-Stamford Division*, 289 F. Supp. 2d 180, 183 (D. Conn. 2003), this Court reviewed the time limits applicable to a case such as this:

> As the Supreme Court stated in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), hybrid claims under Section 301 against an employer for breach of a collective bargaining agreement are subject to the six month time limit of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). "The mere presence of an arbitration clause is sufficient to render an employee's claim a hybrid claim and subject it to a six month statute of limitation." *United Auto., Aerospace and Agricultural Implement Workers v. R.E. Dietz Co.*, 996 F.2d 592, 596 (2d Cir.1993) (citing *McKee v. Transco Products*, 874 F.2d 83, 87 (2d Cir.1989). . . The six-month period begins to run when the plaintiff "discovers, or in the exercise of reasonable diligence, should have discovered, the acts constituting the breach of duty." *Wilhelm v. Sunrise Northeast*, 923 F. Supp. 330, 337 (D.Conn.1995)

The collective bargaining agreement under which Verrilli purports to sue has an arbitration clause, thus this suit is subject to a six month statute of limitations. The remaining question is when that period begins to run in this case. The most reasonable date would appear to be on or about March 2002. On that date Verrilli made an attempt to learn the status of his grievance. He does not remember being told definitively that the Union had decided it would not go to arbitration, but he

clearly has no evidence that the grievance was still being pursued. As this Court

noted in DeRay v. Larson:[9]

> It is well settled in the Second Circuit that "the cause of action accrue[s] no later than the time when [the] plaintiff[ ] knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred...." *Cohen [v. Flushing Hosp. & Med. Ctr]*, 68 F.3d at 67. (*quoting Santos [v. Dist. Council]*, 619 F.2d at 969.). The claim accrues "even if some possibility of nonjudicial enforcement remained." Id. "Where a union refuses or neglects to assist a union member, decides to stop assisting a union member, or acts against the interests of a member, a breach of duty by the union is apparent to the member at the time [he] learns of the union action or inaction about which [he] complains." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir.1989) (omitting citations).

Verrilli had already filed a lawsuit against Sikorsky Aircraft and two years had

already passed since his discharge. While he may have held out some hope, based

on rumors, that something might be done to get his job back,[10] he should have

known at that point that arbitration was not to be pursued. The six-month limi-

tations period that began in March 2002 expired in September 2002. This suit

was not filed for over another six months. It is clearly time barred.

---

[9] ___ F.Supp.2d ___, 2004 WL 2211939 at *6 (D. Conn. 2004) (copy attached).

[10] At his deposition, Verrilli testified that when he went to the Union office in March 2002, he learned that "one of the people down at the office was trying to get something going within or some information to deal with the company on trying to get my job back. Also, there was talk around the shop that I was going to be coming back to work, however that happened, and that's where it was just laying in them trying to get the company to reconsider hiring back people because at the time the company had let a lot of people go who had a lot of talent and training that they later realized that they might need back to continue with their work." (Verrilli deposition at p. 34).

Respectfully submitted,

Edward J. Dempsey
Labor Counsel
United Technologies Corporation
One Financial Plaza
Hartford, CT 06101
tel:    (860) 728-7858
efax:  (860) 660-0288
email: *ed.dempsey@utc.com*
Bar No. ct05183

<u>Certificate of Service</u>

I, Edward J. Dempsey, hereby certify that a copy of the foregoing Memorandum of Law in Support of Defendant Sikorsky Aircraft Corporation's Motion for Summary Judgment was served on all parties by mailing a copy thereof this 23rd day of March 2005 to all counsel of record:

John T. Bochanis
Daly, Weihing & Bochanis
Suite 710
1115 Main Street
Bridgeport, CT 06604

John T. Fussell
Robert M. Cheverie & Associates, P.C.
Commerce Center One
333 East River Drive, Suite 101
East Hartford, CT 06108


Edward J. Dempsey