United States District Court
District of Connecticut
FILED AT                BRIDGEPORT
4/8/05
Deputy Clerk

FILED

2005 APR -1  A 10: 58

U.S. DISTRICT COURT
BRIDEPORT, CONN

United States District Court
District of Connecticut

---

Michael Verrilli,

       *Plaintiff*

v.

Sikorsky Aircraft Corporation, &
Teamsters Local Union No. 1150

       *Defendants.*

Civil Action No.

3:03 CV 0541 (WWE)

March 24, 2005

---

### DEFENDANT SIKORSKY AIRCRAFT CORPORATION'S
### LOCAL RULE 56(A)(1) STATEMENT OF UNDISPUTED FACTS

Pursuant to Rule 56(a)(1) and (3) of the Local Rules of this Court, Defendant, Sikorsky Aircraft Corporation ("Sikorsky Aircraft" or "the Company"), submits the following statement of undisputed material facts:

1.    Defendant Sikorsky Aircraft has a collective bargaining relationship with the Defendant Teamsters Local Union No. 1150 ("Local 1150" or "the Union") and at all times material to this lawsuit a collective bargaining agreement (CBA)

1

was in effect between Sikorsky Aircraft and Local 1150. (Complaint[1] & Answer, ¶¶ 3-7; Amended Complaint[2] & Answer, ¶ 4)

2.    The plaintiff, Michael Verrilli, was employed by Sikorsky Aircraft pursuant to the CBA as a senior composite worker, having worked for the Company for some twenty-one years.   (Complaint & Answer, ¶¶ 7; Amended Complaint & Answer, ¶¶ 3-4; (Verrilli@ p.35[3]))

3.    Letter 19 of the CBA provided, in part, that:

> In the event of a positive drug or alcohol test for any employee, such findings shall be reviewed with the employee by the Medical department. On the first occasion, the employee will be referred to the Employee Assistance Program (EAP) for counseling. . . . On the second occasion of a positive drug or alcohol test finding, the employee shall be discharged.
>
> * * *
>
> The company will continue a random drug and alcohol testing program for those employees as specified in the Federal Aviation Administration anti-drug and alcohol program rule, published November 2, 1988, as amended.

(Verrilli@ p.11 & ex.1)

---

[1] "Complaint" refers to the complaint filed by the plaintiff on December 29, 2003 against Teamsters Local 1150 in Civil Action No. 3-CV-2253, which case has been consolidated with the present case.

[2] "Amended Complaint" refers to the amended complaint filed by the plaintiff on January 9, 2004 against Sikorsky Aircraft.

[3] The deposition of the plaintiff was taken on November 12, 2004. References to the plaintiff's deposition are identified as "Verrilli@p__" or "Verrilli@ex__" referring, respectively to a page of or exhibit to the deposition. Pursuant to Local Rule 56(a)(3) the relevant pages of the Verrilli deposition and the Verrilli deposition exhibits are included as Exhibit A in the supporting documents filed herewith.

4.    Employees covered by the FAA drug and alcohol testing program referred to in Letter 19 of the CBA were those performing safety sensitive work, which would include overhaul and repair on commercial aircraft parts. (IntAns 7,12;[4] Nemec@ p.14[5])

5.    One of the products manufactured by Sikorsky Aircraft is a helicopter designated S-76. It is a commercial helicopter and overhaul and repair work on the S-76 helicopter is safety sensitive work to which the FAA anti-drug and alcohol program rule applied. In 1999 and before then, repair work on S-76 blades was done by Sikorsky Aircraft at its Bridgeport, CT facility. (Kollet@ pp. 12-13)[6]

6.    In or about September 1999, Sikorsky Aircraft had the opportunity to do additional overhaul and repair work on S-76 blades. Prior to that time, the repair work was done in Bridgeport and consisted of minor repair work: patches, paint, small component replacement. The new work involved remanufacturing of

---

[4] "IntAns ___" refers to Sikorsky Aircraft's Answers to Plaintiff's Interrogatories, included as Exhibit B in the supporting documents.

[5] The deposition of Thomas Nemec, Manager, Human Resources at Sikorsky Aircraft, was taken on January 5, 2005. References to pages of Mr. Nemec's deposition are identified as "Nemec@p__". The relevant pages of Mr. Nemec's deposition are included as Exhibit C in the supporting documents.

[6] The deposition of Richard Kollet, Planning and Control Manager for Parts Manufacturing at Sikorsky Aircraft, was taken on January 5, 2005. References to pages of Mr. Kollet's deposition are identified as "Kollet@p__". The relevant pages of Mr. Kollet's deposition are included as Exhibit D in the supporting documents.

the S-76 blades. That work, rather than being done in Bridgeport, would have to be done by the workers in the blades and composites department in Stratford, CT who were engaged in the original manufacture of new blades. Manufacturing new blades is not FAA-covered work, while remanufacturing blades for the S-76 is FAA-covered work. (Kollet@ pp. 12-15).

7.    In preparation for receiving the new FAA-covered work, employees in the blades and composites department, including Plaintiff Verrilli, were advised that, due to the plans for them to be actually or potentially working on the S-76 overhaul and repair work, they were to receive training relating to the FAA anti-drug and alcohol program, after which they would be placed in the FAA drug test pool. (Kollet@ p. 17)

8.    Applicable Department of Transportation regulations state that "[p]rior to the first time an individual performs a safety-sensitive function for an employer, the employer shall require the individual to undergo testing for prohibited drug use." Such a test is labeled "pre-employment testing," whether or not the subject individual is already employed by the employer on non-safety-sensitive functions. (14 CFR, Appendix I to Part 121, Section V. A. 1 (1999)[7]

---

[7] A copy of 14 CFR, Appendix I to Part 121 (1999) is included as Exhibit E in the supporting documents.

4

9.    Applicable Department of Transportation regulations defined "performing a safety-sensitive function," as follows: "an employee is considered to be performing a safety-sensitive function during any period in which he or she is actually performing, ready to perform, or immediately available to perform such function." (14 CFR, Appendix I to Part 121, Section II (1999))

10.    Working on the remanufacture of blades for the S-76 constitutes aircraft maintenance duties within the meaning of the applicable Department of Transportation regulations and, as such, is a safety-sensitive function within the meaning of those regulations. (14 CFR, Appendix I to Part 121, Section III. E. (1999); Kollet@ pp. 12-15)

11.    The remanufacture of blades for the S-76 began to be done by employees in the Blades Department during the last quarter of 1999. By the end of 1999 the Company had overhauled and repaired at least six blades. (Kollet@p. 17, 24).

12.    Working in the Blades Department, Plaintiff Verrilli would be doing the same type of work, whether he was working on production S-76 work (not FAA-covered) or the remanufacturing work (FAA-covered). Plaintiff Verrilli was in a job classification that allowed him to do the FAA covered work, whether or not he actually did so. (Kollet@p. 31)

13.  The remanufacture of blades for the S-76 continued in the Blades Department after 1999 to the present, with the Company doing between thirty and forty such blades each year. (Kollet@p.19).

14.  Plaintiff Verrilli worked in the Blades Department and, when the S-76 remanufacturing work was placed in the Blades Department, Plaintiff Verrilli was ready to perform or immediately available to perform work on those blades. As such, he was engaged in so-called "FAA-covered work." (IntAns 7, 12).

15.  In September 1999, Plaintiff Verrilli attended a training session at which he was told he would have to take a drug test before starting the new FAA-covered work. (Verrilli@p. 15-16)

16.  On September 9, 1999, Plaintiff Verrilli reported to Sikorsky Aircraft's Medical Department and produced a urine specimen for his FAA-required pre-employment drug test. (Maurer@ ¶ 4[8])

17.  Plaintiff Verrilli's urine specimen for the September 9, 1999 drug test was properly tested by a certified laboratory using an initial immunoassy test, the positive result of which was confirmed by a second test using gas chromatogra-

---

[8] "Maurer@¶ __" and "Maurer@ex__" refer, respectively, to paragraphs of the affidavit of Kathleen F. Maurer, M.D., submitted in support of the defendant's motion for summary judgment and exhibits attached thereto. Dr. Maurer's affidavit and exhibits are included as Exhibit F in the supporting documents.

phy/mass spectrometry in accordance with applicable regulations. (Maurer@ ¶¶ 4, 6; Maurer@ex. C.)

18.  Plaintiff Verrilli's September 9, 1999 drug test was positive for Cannabinoids (marijuana). (Maurer@ ¶ 6; Maurer@ex C.)

19. Plaintiff Verrilli does not dispute that his drug test of September 9, 1999 tested positive for marijuana. (Verrilli@p. 21).

20.  As a result of his positive drug test on September 9, 1999, Plaintiff Verrilli was required to complete four weeks of rehabilitation and have a negative drug test before returning to covered work. (Verrilli@pp. 21, 107; 14 CFR Appendix I to Part 121, Section V. F. (1999).)

21.  As a result of his positive drug test on September 9, 1999, Plaintiff Verrilli was required to participate in FAA-required "follow-up testing" for up to 60 months. (Verrilli@p. 21-22; 14 CFR Appendix I to Part 121, Section V. G. (1999).)

22.  Plaintiff Verrilli was told that if he had another positive drug test during the 60 months of follow-up testing his employment would be terminated. (Verrilli@p. 22)

23.  On March 21, 2000, Plaintiff Verrilli reported to Sikorsky Aircraft's Medical Department and produced a urine specimen for an FAA-required follow-up test. (Maurer@ ¶ 9; Maurer@ex. E.)

24. Plaintiff Verrilli's urine specimen for his March 21, 2000 drug test was properly tested by a certified laboratory using an initial immunoassy test, the positive result of which was confirmed by a second test using gas chromatography/ mass spectrometry in accordance with applicable regulations. (Maurer@ ¶ 6; Maurer@ex. C.)

25. Plaintiff Verrilli's drug test of March 21, 2000 was positive for Cocaine Metabolites. (Maurer@ ¶ 11; Maurer@ ex. E.)

26. In accordance with the request of Plaintiff Verrilli, a split sample of his March 21, 2000 urine specimen was sent to a different, certified laboratory for an additional test. (Maurer@ ¶¶ 13-14).

27. The split sample test of Plaintiff Verrilli's March 21, 2000 urine specimen reconfirmed a positive test for cocaine metabolites. (Maurer@ ¶ 14; Maurer@ ex. E.)

28. Plaintiff Verrilli has no evidence that would dispute the accuracy of his two, positive drug tests. (Verrilli@p. 91-92)

29. As a result of Plaintiff Verrilli's having a second, positive drug test, Sikorsky Aircraft terminated his employment on March 30, 2000. (Kollet@p. 25-27)

30.  On April 4, 2000, Plaintiff Verrilli filed a timely grievance under the CBA concerning the termination of his employment. (Verrilli@ p. 29; Verrilli@ ex. 5)

31.  Plaintiff Verrilli's grievance regarding the termination of his employment due to his second positive drug test was denied by the Company on July 18, 2000. (Verrilli@ex. 5)

32.  After Plaintiff Verrilli's grievance was denied, Local 1150 filed a timely appeal to arbitration on July 18, 2000. (Jackson@p. 44-45[9])

33.  Plaintiff Verrilli filed a lawsuit in Connecticut Superior Court on February 2, 2001 against Sikorsky Aircraft (docket no. CV-01-0380937-S), alleging that his discharge from employment on March 30, 2000 violated Conn. Gen. Stat § 31-51 et seq. That lawsuit is still pending.

34.  Harvey Jackson became President of Local 1150 in January 2002. At the time Harvey Jackson assumed that office, Plaintiff Verrilli's grievance had not proceeded to arbitration. (Jackson@pp. 7, 47).

---

[9] The deposition of Harvey Jackson, President of Teamsters Local 1150 was taken on November 29, 2004. References to pages of Mr. Jackson's deposition are identified as "Jackson@p__". The relevant pages of Mr. Jackson's deposition are included as Exhibit G in the supporting documents.

35.  In February or March 2002, Plaintiff Verrilli went to the Union office and spoke with Harvey Jackson about his grievance. Verrilli admits that Jackson told him at that meeting that Verrilli had failed two drug tests. (Verrilli@p. 33)

36.  Harvey Jackson told Plaintiff Verrilli at that meeting that Verrilli's grievance was not going forward to arbitration. (Jackson@p. 47)

37.  Plaintiff Verrilli does not recall Jackson telling him his grievance was not going to arbitration. (Verrilli@p. 33)

38.  Verrilli does recall he learned at that meeting that someone at the Union was "trying to get something going within or some information to deal with the company on trying to get my job back," but not through arbitration. (Verrilli@p. 34)

39.  Local 1150 decided not to proceed to arbitration with Plaintiff Verrilli's grievance because the "two strikes you are out" provision of the CBA with regard to discharge for a second positive drug test meant that the case did not meet the union's criteria and the union believed it would have no relative success in the case. (Jackson@p. 50-51)

40.  Plaintiff Verrilli is not aware of any person who failed two drug tests for whom the union proceeded to arbitration. (Verrilli@p. 87)

Respectfully submitted,

Edward J. Dempsey
Labor Counsel
United Technologies Corporation
One Financial Plaza
Hartford, CT 06101
tel:     (860) 728-7858
efax:    (860) 660-0288
email: *ed.dempsey@utc.com*
Bar No. ct05183

### Certificate of Service

I, Edward J. Dempsey, hereby certify that a copy of the foregoing Local Rule

56(a)(1) Statement of Undisputed Facts In Support of Defendant Sikorsky Aircraft

Corporation's Motion For Summary Judgment was served on all parties by mailing

a copy thereof this 23rd day of March 2005 to all counsel of record:

John T. Bochanis
Daly, Weihing & Bochanis
Suite 710
1115 Main Street
Bridgeport, CT 06604

John T. Fussell
Robert M. Cheverie & Associates, P.C.
Commerce Center One
333 East River Drive, Suite 101
East Hartford, CT 06108

Edward J. Dempsey