UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL VERRILLI, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIV. NO. 3:03-CV-0541 (WWE) |
| | : | |
| SIKORSKY AIRCRAFT CORP., & | : | |
| TEAMSTERS LOCAL UNION NO.1150, | : | |
| | : | |
| Defendants. | : | October 5, 2005 |

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This action concerns allegations of unlawful discharge and breach of a collective bargaining agreement ("CBA") on the part of Sikorsky Aircraft Corp. ("Sikorsky"), the plaintiff's employer, and breach of the duty of fair representation by virtue of actions committed by the Teamsters Local Union No. 1150 ("Union"), the plaintiff's representative union. The plaintiff brings this case pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. section 185. Both the Union and Sikorsky move for summary judgment [Docs. ## 51 and 55, respectively] because the plaintiff was discharged for just cause, the Union did not breach its duty of fair representation with regard to the plaintiff's lawful discharge, and the plaintiff's cause of action is barred by the statute of limitations.

For the following reasons, the Court will grant the defendants' motions for summary judgment.

## I.  BACKGROUND

The plaintiff was employed by Sikorsky for twenty-one years.  Sikorsky manufactures, maintains, overhauls and repairs helicopters and helicopter parts pursuant to both commercial and government contracts.  Federal regulations govern this industry and require such employers to ensure that its employees who are engaged in, or are likely to be engaged in, "safety-sensitive" work are free from the use of illegal drugs.  To that end, the Federal Aviation Administration ("FAA") subjects such workers to the FAA drug testing rules; to wit, if an employee twice tests positive for the use of illegal drugs, he or she is thereby discharged with just cause. This regulation is incorporated into the CBA between the Union and the covered employees.[1]

In the summer of 1999, the plaintiff and the other employees in the Blades Department were advised that Sikorsky would be receiving a new contract for work related to the repairing and overhaul of rotor blades for commercial S-76 helicopters.  This new work was "FAA covered" and, consequently, each employee would be subject to FAA regulations, including the FAA drug testing rules. In September 1999, the blade shop employees, including the plaintiff, attended the FAA drug and alcohol training program.  The employees specifically were told that they would be subjected to drug testing before being transferred into this new job detail.

On September 9, 1999, the plaintiff tested positive for marijuana.  The plaintiff admitted

---

[1] Letter 19 of the CBA provides in relevant part: "In the event of a positive drug or alcohol test for any employee, such findings shall be reviewed with the employee by the Medical Department.  On the first occasion, the employee shall be referred to the Employee Assistance Program (EAP) for counseling and will be required to comply with the recommendations as prescribed by the EAP counselor(s).  Failure to accept and comply with such rehabilitation will result in the employee's discharge.  Medical release will be based on the condition of the employee with concern about the safety of the employee, fellow workers & the workplace.  *On the second occasion of a positive drug or alcohol test finding, the employee shall be discharged.*"  CBA, Letter 19, at 106 (emphasis added).

that he had no reason to doubt the veracity of the test results or the manner in which the lab had tested his sample. When interviewed by the Medical Review Officer, the plaintiff admitted to "regular use" of marijuana. Consequently, the plaintiff enrolled in a rehabilitation program and was thereafter subject to random FAA drug testing for up to sixty months. These follow-up drug tests were administered in November and December 1999 and in January and February 2000. All these tests were negative.

However, when tested on March 21, 2000, the plaintiff tested positive for cocaine. This time he requested, pursuant to his right, a "split-sample" test which would either confirm or invalidate the initial findings. This "split-sample" test confirmed the positive result of the first test.

As a result of these two positive drug tests, and pursuant to the governing CBA, the plaintiff was discharged on March 30, 2000. On April 3, 2000, the plaintiff filed a union grievance contesting the conditions of his discharge. Sikorsky denied the plaintiff's grievance throughout the three-step grievance procedure, and the Union then added his grievance to the arbitration list on July 18, 2000, the same day his grievance was denied at the third and final level. The plaintiff was never given any assurance that his grievance would proceed to arbitration and, in fact, the Union decided not to arbitrate the plaintiff's grievance based on the CBA's "two strikes and you're out" standard and the plaintiff's two positive drug tests.

On March 27, 2003, the plaintiff filed suit against Sikorsky, claiming that he was wrongfully discharged pursuant to the CBA (Docket # 3:03-cv-0541). On December 9, 2003, he filed suit against the Union (Docket # 3:03-cv-2253), arguing that by not taking his case to arbitration, the Union violated the duty of fair representation. On February 2, 2004, the Court

consolidated the two cases into the present action.

## II. DISCUSSION

1. Summary Judgment Standard

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

2. "Hybrid" Suit

The plaintiff alleges facts that form a basis for a "hybrid" action based on a breach of the duty of fair representation and a breach of contract pursuant to section 301 of the LMRA. In

order to prevail on this "hybrid" LMRA claim, the plaintiff must prove both Sikorsky breached the CBA by discharging him without just cause and that the Union breached its duty of fair representation.  Balestracci v. General Dynamics Corp., 221 F.Supp.2d 258, 266 (D. Conn. 2002). "In a section 301 hybrid action, an employee's ability to maintain a breach of contract action derives solely and exclusively from a corresponding allegation that the Union breached its duty of fair representation.  Moreover, an employee may not obtain a judicial review of a breach of contract claim under a collective bargaining agreement unless he can first demonstrate that the Union breached its duty of fair representation.  The two claims are therefore inextricably linked, with the result that one claim cannot proceed without the other."  Desmond v. Retail Clothing Salesmen's Union Local 340, 1991 WL 190586, *5 (S.D.N.Y.).

3.  Statute of Limitations

The defendants argue that the plaintiff's claims are barred by the six-month statute of limitations governing section 301 hybrid claims.  DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).  The plaintiff claims that this action is not barred because the union continuously represented to the plaintiff that his grievance was pending arbitration and that he had to "be patient."  As a result, he argues, the statute of limitations did not begin to accrue until August 2003, when the defendant failed to respond to the plaintiff's written requests for information regarding the status of the arbitration.

The limitations period for a claim of breach of the duty of fair representation is six months, "counted from the time when the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred."  Kavowras v. New York Times Co.,

328 F.3d 50, 55 (2d Cir. 2003). This constructive knowledge of the union's breach may occur when the claim to arbitration is still pending but the union has failed to pursue it. "Where the cause of action did not exist unless a duty of fair representation had been breached, we think the cause of action accrued no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained." Santos v. District Council of New York City, 619 F.2d 963, 969 (2d Cir. 1980).

The plaintiff claims that he was given reason to believe that his claim was still pending as late as March 19, 2002, when the Union allegedly requested additional medical documentation it needed in order to process the claim to arbitration. He asserts that the breach of the Union's duty was only apparent in August 2003 when the Union failed to respond to the plaintiff's written queries as to the status of the claim. If this were true, then this cause of action, filed on December 29, 2003, would be timely.

However, "the statute of limitations is not tolled or extended by plaintiff's repeated requests that defendant bring a claim on his behalf." Orji v. Meadow Park Nursing Home, Inc., et al., 1996 WL 537824, *2 (E.D.N.Y.). A union's inaction has been found to establish a breach of duty of fair representation. "Where a union refuses or neglects to assist a union member, decides to stop assisting a union member, or acts against the interests of a member, a breach of duty is apparent to the member at the time she learns of the union action or inaction about which she complains." Ghartey v. St. John's Queens Hospital, 869 F.2d 160, 165 (2d Cir. 1989).[2]

---

[2] Ghartey is distinguishable from the present case in that the plaintiff did file her action within six months of the day the arbitrator issued the award of her grievance. "Approval of an arbitration statute seems straightforward enough when a grievance has run its full course, culminating in a formal award by a neutral arbitrator." DelCostello v. Teamsters, 462 U.S. 151, 166 n. 16 (contrasting case to cause of action marked by union's inaction).

Here, the plaintiff reasonably should have known that the Union was not proceeding towards arbitration well before three years and five months since the denial of his grievance at the third step of the established procedure. In Wilhelm v. Sunrise Northeast, Inc., 923 F.Supp. 330, 337 (D. Conn. 1995), the court found that the plaintiff's claim was barred when her claim was brought twenty-three months after her grievance was denied. "It is clear that exercising reasonable diligence, she should have concluded no further union support was forthcoming one year after the denial of the grievance." Pursuant to the theory of Wilhelm, the plaintiff here, in the exercise of due diligence, should have confirmed the Union's inaction by July 18, 2001, one year after the denial of his grievance at the third and final step.

> The Union should be encouraged to promptly notify the employee of its decision to pursue, or not to pursue, his or her claim and that this prompt action will help preserve any legal remedies available to the employee. To say, however, that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to eliminate.

Metz v. Tootsie Roll Industries, Inc., 715 F.2d 299, 304 (7th Cir. 1983).

The Court finds that three years and five months since the date his grievance was denied is well beyond the point at which the plaintiff should have known that his grievance was not proceeding to arbitration. Therefore, the Court will find that the plaintiff's cause of action against the Union is barred by the six-month statute of limitations and will grant the defendants' motions for summary judgment on that ground.

However, even if the Court were to find that this cause of action was not barred by the statute of limitations, an analysis of the merits of the case reveals that summary judgment is also warranted regarding the plaintiff's other claims. We turn now to consideration of the plaintiff's

two additional claims.

4. Breach of Collective Bargaining Agreement

The plaintiff alleges that Sikorsky breached its contract because it terminated him without just cause, as is required by the CBA. However, the CBA is explicit in its policy regarding positive drug tests and employment termination.[3] There is no dispute that the plaintiff tested positive for drugs on two occasions. Instead, the plaintiff argues that he was tested improperly because he did not fall within the rubric of "FAA covered" employees and, therefore, was not to be subjected to the drug testing.

The CBA provides that "the company will continue a random drug and alcohol testing program for those employees as specified in the Federal Aviation Administration anti-drug and alcohol program rule." The parties agree that this provision only relates to those employees performing FAA-covered work and are, therefore, privy to FAA regulations. However, this not only applies to employees currently performing such work; pursuant to the federal regulations, it includes employees who are "actually performing, ready to perform or immediately available to perform" covered work. 14 C.F.R. Pt.121, App.1 at 567. The plaintiff argues that he does not fall within any of these categories. The Court disagrees.

On September 1, 1999, the plaintiff and other employees of Sikorsky were required to attend a meeting at which they were informed that a new department was being established to perform the assembly of blades, overhaul and repair work on S-76 helicopters for private

---

[3] See n.1, *supra*, "on the second occasion of a positive drug or alcohol test finding, the employee shall be discharged."

contracts.  They were informed that this work was considered "FAA-covered" and all employees performing same would be subject to FAA drug testing procedures.  The plaintiff was told that he was a part of this group (the Blades Department); specifically, that his name was "on the list" of a team of people picked for this new department.  The plaintiff argues that this is insufficient to put him on notice that he was subject to FAA drug testing protocol and that, therefore, he was unfairly tested.  The defendants claim that such notice is sufficient.  The Court agrees with the defendants.

     As stated in the FAA regulations, all employees "actually performing, ready to perform or immediately available to perform" safety-sensitive work, such as that to be done in the new Blades Department, were subject to random drug testing.  There is no dispute that the work to be completed in the Blades Department is within the category of "safety sensitive" work.  In his deposition, the plaintiff testified that he was told his name was on the list of those employees included in this group.  The fact that the plaintiff never actually performed the work in question is immaterial – his presence as an employee in the Blades Department made him "ready" and "immediately available" to perform this work and, therefore, privy to the FAA regulations concerning drug testing.  Accordingly, it was well within the right (indeed, the duty) of Sikorsky to ensure that the plaintiff was tested for drugs.

     The plaintiff also argues that the drug test was performed incorrectly.  Specifically, he claims that he was not advised that he was entitled to a split-sample test of the first drug test.  The plaintiff presents no evidence to this effect.  He did not dispute the findings of the first test.  Indeed, the fact that he did request a split-sample test of the second positive test result suggests that he was aware of the split-sample testing policy.  Therefore, there is no evidence that

Sikorsky performed either drug test incorrectly. Sikorsky did not err in its termination of the plaintiff and, accordingly, the Court will grant the defendants' motions for summary judgment on these grounds.

5.  Breach of Duty of Fair Representation

As discussed earlier, a hybrid claim cannot prevail unless both a violation of the CBA and a breach of the duty are found. The two actions are linked and the failure to prove the existence of one necessarily eliminates the existence of a hybrid claim. Desmond v. Retail Clothing Salesmen's Union Local 340, 1991 WL 190586, *5 (S.D.N.Y.). However, for the purpose of thoroughness, the Court will examine the plaintiff's claim of breach of the duty of fair representation.

The plaintiff claims that the Union breached its duty of fair representation in that it failed to process his grievance through arbitration. He argues that the Union's conduct was "perfunctory" and therefore fulfilled the established standard for breach of duty of fair representation. The Union asserts that since the plaintiff was terminated for just cause and because it processed the plaintiff's grievance through the three-step procedure as set forth in the CBA, it did not breach its duty to the plaintiff. The Court agrees with the Union.

"When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty, implied from its status under section 9(a) of the NLRA as the exclusive representative of the employees in a unit, to represent all members fairly." Marquez v. Screen Actors Guild, 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). This duty requires that a union "serve the interests of all members without hostility or

discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Marquez, at 44. A union's actions "may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside of a 'wide range of reasonableness' that it is wholly irrational or arbitrary." Air Line Pilots Assoc. v. O'Neill, 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). The two-prong test of breach of duty of fair representation requires a finding that: (1) "the union's conduct must first have been arbitrary, discriminatory or in bad faith" and (2) "it must have seriously undermined the arbitral process." Rennie v. Glass, Molders, Pottery, Plastics and Allied Workers International Union, AFL-CIO, 38 F.Supp.2d 209, 215 (D.Conn. 1999).

      Here, the Union's actions cannot be construed as arbitrary, discriminatory or in bad faith. As the Court has concluded, the plaintiff was terminated for just cause and, pursuant to the CBA, the Union thereafter carried the plaintiff's grievance through the proper channels. Specifically, the Union processed the grievance through step three of the delineated procedure and then claimed it for arbitration, placing it on the list for arbitration on July 18, 2000. The plaintiff's claim was never sent to arbitration. The plaintiff argues that the failure of the union to process his grievance through arbitration was a breach of its fair duty of representation.

      An employee is not entitled as of right to the arbitration of a grievance. Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ("Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the CBA.") Here, the Union determined the plaintiff's grievance was without merit and decided not to pursue arbitration. "Quite simply, when a union,

11

after a good faith investigation of the merits of the grievance, concludes that the claim is insubstantial and refuses to encumber further its grievance channels by continuing to process a nonmeritorious claim, its duty of fair representation is satisfied and no claim against it may be brought." Taylor v. MCI, International, 215 F.Supp.2d 347, 350 (S.D.N.Y. 2002). The plaintiff, accordingly, does not have a right to have his grievance arbitrated. He cannot demonstrate that the Union's actions were beyond the "wide range of reasonableness" in that the Court has concluded that there was no violation of the plaintiff's rights pursuant to the CBA. As there is no guarantee of or entitlement to arbitration, it was well within the Union's discretion to decide not to pursue same. Accordingly, the Court will grant the defendants' motions for summary judgment on these grounds as well.

### III.  CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment [Docs. ## 51 and 55] are GRANTED.

The Clerk is instructed to close this case.

ORDERED this 5th day of October, 2005 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge